### FALLON v. CORNELL STEAMBOAT CO.

(Circuit Court, S. D. New York. June 16, 1908.)

**1. MASTER AND SERVANT—MASTER'S LIABILITY FOR INJURY TO SERVANT—FELLOW SERVANTS.**

The crews of two vessels owned by the same employer are not by reason of that fact in a common employment, and a member of one crew is not a fellow servant with members of the other.

[Ed. Note.— For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 405, 406, 492.]

**2. SAME—MASTER OF VESSEL AND SEAMEN.**

The master of a vessel is not a fellow servant with any other member of the crew.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 492.]

At Law. On demurrer to complaint.

Hyland & Zabriskie, for plaintiff.

Amos Van Etten, for defendant.

HOUGH, District Judge. The demurrer admits (inter alia) that the defendant owned and operated two tugboats. Plaintiff's decedent was employed by defendant as an engineer on board one of them, but at the time in the complaint mentioned he was working as a fireman. The tugs collided, and it is alleged that the resulting death of plaintiff's decedent was "wholly caused by and through the fault, negligence, and carelessness of the defendant," and the erroneous navigation of "said vessels upon the part of the masters thereof, who were in charge of and controlling the navigation" of the same. In a separate sentence it is said that the master of one of the tugboats was at the time intoxicated.

The allegation of intoxication may be disregarded. If there were no other allegation of fault in the complaint, I am inclined to think it would be demurrable, for non constat that a man, though intoxicated, may not steer a boat skillfully. But the allegation of drunkenness stands by itself, and the statements of negligent navigation by both tugs and their masters are sufficient. It must therefore be assumed, on this hearing, that decedent was an engineer in defendant's employment, that he was at the time of his death voluntarily acting as a fireman, and that the careless navigation of both tugs caused his death without fault on his part.

The questions suggested are: First, whether a man who is an engineer, and voluntarily, but temporarily, acts as fireman, thereby changes his status in respect of the law concerning negligence of fellow servants; second, whether either an engineer or a fireman is a fellow servant with (a) the master of his own vessel, or (b) the master of another vessel of the same ownership.

This demurrer cannot be sustained, unless it be held that the engineer or fireman on one of two vessels of common ownership is a fellow servant with the master of both vessels; for under this complaint proven negligence on the part of the master of either tug would justify recovery. I have no doubt that the crews of two vessels owned by the same employer are not by reason of that fact in a common employment, and this for the reasons given in The Petrel, Prob. Div. 1893, 320. Strictly speaking, this disposes of the demurrer.

But, to consider the questions further, I am not aware of any case declaring, otherwise than by dictum, that the master of a vessel is not a fellow servant with the members of his crew; but I do think that the dicta to that effect in The Hamilton, 146 Fed., at page 727, 77 C. C. A. 150, and The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760, are controlling on this court. The Clatsop Chief (D. C.) 8 Fed. 163, and The Transfer No. 4, 61 Fed. 364, 9 C. C. A. 521, look in the same direction, and with Judge Deady, in The Clatsop Chief, I think there is some authority and "more reason" for holding the common employer liable for injuries caused to inferior members of the crew by the negligence of the master. If reference be made to the leading case in the United States on the law of fellow servant (Farwell v. Boston & Worcester Railroad Corporation, 4 Metc. [Mass.] 49, 38 Am. Dec. 339), one must feel how inappropriate the reasoning there used is to the relation of crew and captain. Shaw, C. J., said:

"Where several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each depends much on the care and skill with which each other shall perform his appropriate duty, each is an observer of the conduct of the others, can give notice of any misconduct, incapacity, or neglect of duty, and leave the service if the common employer will not take such precautions and employ such agents as the safety of the whole party may require." Page 59 of 4 Metc. (38 Am. Dec. 339).

This was said in 1842, it is a great lawyer's best justification for the fellow servant rule, and no better has ever been given. We are apt to cite the rule and forget the justification. Under modern conditions there may still be some employments to which this reasoning is applicable; but it is not and never was applicable to shipboard conditions. The master of a ship is for almost every purpose (so far as his crew is concerned) a vice principal, and he may on occasion not only represent his owners, but represent the law, certainly to the extremity of imprisonment, and possibly to the length of killing a mutinous subordinate. To hold that such a man is a fellow servant with any inferior officer or seaman seems nearly absurd, and certainly irreconcilable with the best reason for the rule laid down by Chief Justice Shaw.

It is asserted that most of the cases treating of the relations of master and crew are to be found in admiralty, and that they are therefore not applicable to this common-law action. The doctrine of fel-

low servant is not of admiralty origin. It is a common-law rule, which has been imported into the admiralty. It may be that admiralty has not unreservedly accepted it; but, if so, it is only because the rule is unreasonable as applied to conditions on board a ship. But, if the rule be inapplicable to such conditions, it is just as inapplicable in one forum as another. The conditions do not change with the forum. Indeed, the rule assumes that the persons are fellow servants to whom it is applicable. It is conceivable that the rules of law may vary as between common law and admiralty; but it is not conceivable that the relations between employés vary according to the forum in which an action is promoted.

Being, therefore, of opinion that the master of a vessel is not a fellow servant with any other member of the crew, I do not think that this decedent, even when serving as an engineer, was a fellow servant with the master of his own tug, or of any other tug belonging to the defendant, and it therefore becomes unnecessary to consider whether he changed his condition or gained any other privileges by voluntarily acting as a fireman at the time of his decease. It is suggested that a distinction should be made between large or deep-sea vessels and harbor tugs. I see no reason for such a distinction. The master of a tug is a licensed officer. It may not be necessary for him to exercise the great powers of a shipmaster as frequently as must the commander of a large vessel on a long voyage; but the power is there, the relation with the owner is the same, and the position of superiority toward every other person on board is identical in the case of the tug and in that of the ocean liner.

The demurrer is overruled, with leave to answer within 20 days, on payment of costs.